IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEN HAYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEMBIO DIAGNOSTICS, INC., RICHARD L. EBERLY, GAIL S. PAGE, KATHERINE L. DAVIS, MARY LAKE POLAN, and JOHN G. POTTHOFF,<br><br>Defendants. | No. __:20-cv-_____-_____<br><br>CLASS ACTION COMPLAINT FOR:<br><br>(1) Breach of Fiduciary Duties;<br><br>(2) Violation of § 14(a) of the Securities Exchange Act of 1934;<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Ken Hayes ("Plaintiff") by his attorneys, on behalf of himself and those similarly situated, brings this Complaint for Violation of Federal Securities Laws ("Complaint") against Chembio Diagnostics, Inc. ("Chembio" or the "Company") and the members of its board of directors (the "Board"), namely: Richard L. Eberly, Gail S. Page, Katherine L. Davis, Mary Lake Polan, and John G. Potthoff (collectively, the "Individual Defendants" and, together with Chembio, "Defendants"). Plaintiff's allegations are based upon the knowledge of Plaintiff as to himself and upon information and belief, including the investigation conducted by his undersigned attorneys and a review of public information, news reports, and documents filed with the U.S. Securities and Exchange Commission ("SEC").

### INTRODUCTION

1. Plaintiff brings this shareholder class action on behalf of himself and all other Chembio public stockholders against Defendants to remedy numerous misstatements of material information in the proxy statement disseminated by Chembio in advance of the Annual Meeting

– 1 –

of Stockholders of Chembio Diagnostics, Inc. to be held on Tuesday, July 28, 2020 (the "Annual Meeting").

2. On June 16, 2020, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in which Defendants are soliciting stockholder approval of, *inter alia*, a proposal to change the Company's state of incorporation from the State of Nevada to the State of Delaware (the "Reincorporation Proposal").

3. Under the Nevada Revised Statutes ("NRS"), a conversion such as the Reincorporation Proposal must be approved by a majority of the voting power of the stockholders.

4. Defendants, however, claim in the Proxy that approval of the Reincorporation Proposal requires only a majority of the votes entitled to be cast and present in person or represented by proxy at the Annual Meeting. This lesser standard excludes not only shares that are not present or represented by proxy, but also shares whose beneficial owners do not provide voting instructions. To this end, Defendants also erroneously disclose that these uninstructed shares, which will be recorded as broker non-votes, will have no effect on the outcome of the Reincorporation Proposal.

5. In making these misstatements, Defendants misrepresent critical facts that Chembio stockholders need to know when deciding whether and/or how to vote on the Reincorporation Proposal. As it stands, because they have been wrongly advised concerning both the applicable voting standard and what will happen if they do not provide voting instructions to their brokers, Chembio stockholders have been left with the mistaken impression that, if they do not participate in the vote, their shares will not factor into the equation, when in fact such shares' voting power will have the same effect as votes against the Reincorporation Proposal.

6. Defendants, when comparing the NRS to the Delaware General Corporation Law ("DGCL"), also misstated the vote required to effect a charter amendment under the latter. While the DGCL requires that the affirmative vote of majority of the outstanding stock entitled to vote on a charter amendment is required for its adoption, Defendants erroneously state in the Proxy that the affirmative vote of only the majority of shares present in person or represented by proxy and entitled to vote would be required to approve any amendment to the Company's certificate of incorporation.

7. Chembio stockholders have thus been misinformed about not only the voting standard and effect of broker non-votes, but also the law that will apply to Chembio after the conversion.

8. Rounding out the superfecta, Chembio stockholders have been advised that, if they approve the Reincorporation Proposal, the Company's reincorporation will be effectuated pursuant to a conversion plan ("Plan of Conversion", annexed to the Proxy as Appendix A) which has been adopted by the Board and contemplates that the Company will be reincorporated in Delaware and governed by Delaware law. The Company also will adopt new bylaws ("Delaware Bylaws", annexed to the Proxy as Appendix D) which, stockholders are told, are consistent with the DGCL.

9. In actuality, the Delaware Bylaws contain a provision which is flatly contradicted by the DGCL. While the Delaware Bylaws provide that directors may be removed by a vote of the holders of two-thirds of outstanding shares entitled to vote at a meeting for the election of directors, the DGCL provides that a removal vote will pass by a vote of the holders of a majority of the shares then entitled to vote at an election of directors.

10. Chembio stockholders need to know that uninstructed shares will have the practical effect of votes against the Reincorporation Proposal so that they do not sit out the vote based on

the mistaken belief that inaction will not affect its outcome, as the Proxy presently (and falsely) says. Chembio stockholders need to know the actual standard for charter amendments under the DGCL. And last but not least, Chembio stockholders need to know that the present Plan of Incorporation contemplates the adoption of Delaware Bylaws with at least one provision that is unenforceable as a matter of Delaware statutory law.

11. Plaintiff therefore seeks to enjoin the vote on the Reincorporation Proposal scheduled to be held at the Annual Meeting until after Defendants correct the foregoing errors, each of which constitutes a discrete misrepresentation of material fact giving rise to a cognizable claim for violation of the federal security laws.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78aa].

13. In connection with the acts, omissions, conduct, and wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

14. Venue is proper because the Company maintains its headquarters in this District, and many of the acts and conduct complained of herein, including dissemination of the Proxy, occurred in this District.

15. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

## PARTIES

### I. PLAINTIFF

16. Plaintiff is, and has continuously been, a Chembio stockholder at all relevant times and is entitled to vote at the Annual Meeting.

### II. DEFENDANTS

17. Defendant Chembio Diagnostics, Inc. is a Nevada corporation which maintains its principal executive offices at 555 Wireless Boulevard, Hauppauge, New York 11788, in this judicial district.

18. Defendant Richard L. Eberly joined Chembio in March 2020 and presently serves as its President and Chief Executive Officer, in addition to serving on the Board.

19. Defendant Gail S. Page has been a member of the Board since July 2017, and presently serves as its Executive Chair.

20. Defendant Katherine L. Davis has been a member of the Board since May 2007.

21. Defendant Mary Lake Polan has been a member of the Board since August 2018.

22. Defendant John G. Potthoff has been a member of the Board since May 2018.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of holders of Chembio common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes the Individual Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Individual Defendants.

24. This action is properly maintainable as a class action because, *inter alia*:

(a) The Class is so numerous that joinder of all members is impracticable. Chembio's stock is publicly traded on the Nasdaq and, as of June 1, 2020—*i.e.*, the record date

        for the Annual Meeting—there were 20,168,503 shares of Chembio common stock outstanding and entitled to vote. Moreover, the holders of these shares are geographically dispersed throughout the United States;

(b)    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions include, *inter alia*: (i) whether Defendants have violated the federal securities laws and pendant state common law; and (ii) whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury;

(c)    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of Plaintiff are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

(d)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(e)    Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## FURTHER SUBSTANTIVE ALLEGATIONS

25. Chembio is a Hauppage-based company which describes itself as "a leading provider of point-of-care diagnostic products for the detection and diagnosis of infectious diseases." While the Company is presently incorporated in Nevada, it is seeking to reincorporate in Delaware through the Reincorporation Proposal.

26. On June 16, 2020, the Company filed the Proxy with the SEC in advance of the Annual Meeting scheduled for July 28, 2020. Through the Proxy, Defendants are soliciting stockholder approval of the Reincorporation Proposal. If it is approved, the Company will change its state of incorporation from Nevada to Delaware pursuant to the Plan of Conversion approved by the Board.

27. In the Proxy, Defendants claim that reincorporation in Delaware would not only "enhance [Chembio's] ability to attract and retain qualified directors and executive officers, and provide access to specialized courts where necessary", but also provide additional benefits:

> We believe that reincorporating in Delaware will give us a greater measure of flexibility and certainty in corporate governance than is available under Nevada law. Delaware is recognized for adopting comprehensive, modern, and flexible corporate laws, which are revised periodically to respond to the changing legal and business needs of corporations. Delaware's specialized business judiciary is composed of experts in corporate law matters, and a substantial body of court decisions has developed construing Delaware corporation law. As a result, Delaware law provides greater clarity and predictability with respect to our corporate legal affairs than is currently the case under Nevada law. For these and other reasons, many major U.S. corporations have incorporated in Delaware or have changed their corporate domiciles to Delaware in a manner similar to the manner outlined in [the Reincorporation Proposal].

(Proxy at 6-7).

28. Shortly after touting the "clarity and predictability" of Delaware law, however, Defendants went on to misstate the standard for approval for of the Reincorporation Proposal under Nevada law.

29. Specifically, Nevada law requires that a conversation like the one contemplated by the Reincorporation Proposal "must be approved by a majority of the voting power of the stockholders." NRS § 92A.120(5).

30. Defendants, contrary to Nevada law, have indicated that only a lesser threshold need be satisfied for the Reincorporation Proposal to carry and misstated the treatment and effect of broker non-votes under this incorrect voting standard:

> ***Our reincorporation from Nevada to Delaware must be affirmatively approved by a majority of the votes entitled to be cast and present in person or represented by proxy at the Annual Meeting***. Abstentions will count as votes against this proposal because shares with respect to which a stockholder abstains will be deemed present and entitled to vote. ***Broker non-votes will have no effect on the outcome of this proposal*** because broker non-votes are not counted as "votes cast."

(Proxy at 12 (emphasis added)).

31. These incorrect disclosures constitute false statements of material fact.

32. Generally, with respect to proposals like the Reincorporation Proposal, stockholders may cast a vote "for" or "against" the proposal, abstain from voting, or not submit voting instructions. Most Chembio stockholders beneficially hold their Company shares in "street name", with a broker acting as the actual record holder of the shares. If brokers do not receive voting instructions from a beneficial stockholder, they may have discretion to vote the stockholder's shares depending on whether the proposal is "routine" or "non-routine". With respect to "routine" proposals, brokers have authority to vote uninstructed shares within and pursuant to their discretion and will typically vote pursuant to the recommendations set forth in a proxy statement. Brokers have no discretionary authority to vote shares with respect to "non-routine" proposals and a "broker non-vote" is recorded for each such uninstructed share.

33. The effect of a broker non-vote depends on both the matter being voted upon and the applicable voting standard. If a proposal requires only approval by a majority of the votes cast,

then broker non-votes will have no effect. However, if a proposal requires the approval of the majority of all outstanding stock, then broker non-votes have the same effect as votes against the proposal.

34. In the Proxy, Defendants disclose that the Reincorporation Proposal is a non-routine matter. Therefore, if beneficial stockholders do not provide voting instructions to their brokers, such brokers will record a broker non-vote for each uninstructed share. Because the Reincorporation Proposal requires the affirmative vote of the majority of outstanding Chembio stock, uninstructed shares will consequently have the same effect as votes against the Reincorporation Proposal.

35. Accordingly, Defendants' claim that broker non-votes have no effect on the outcome of the Reincorporation Proposal is at odds with Nevada statutory law and affirmatively false.

36. This misstatement on its face violates Schedule 14A, promulgated by the SEC, and for that reason alone constitutes a material misrepresentation. Specifically, the SEC requires that issuers disclose the voting standard and method of vote tabulation as to each matter put to a stockholder vote:

> *Voting procedures*. **As to each matter which is to be submitted to a vote of security holders**, furnish the following information:
>
> (a) **State the vote required for approval** or election, other than for the approval of auditors.
>
> (b) **Disclose** the method by which votes will be counted, including **the treatment and effect of abstentions and broker non-votes** under applicable state law as well as registrant charter and by-law provisions.

17 CFR § 240.14a-101, Item 21.

37. Defendants' false statements of material facts are exacerbated by the fact that Defendants' disclosure may well be outcome determinative. At the Company's last annual meeting, 7,487,638 broker non-votes, or approximately 43.6% of shares entitled to be cast at the meeting, were recorded with respect to each non-routine proposal put to a stockholder vote. For the sake of comparison, the votes cast in favor of any option in non-routine matters fell between 6,173,474 and 8,207,500.

38. Moreover, as of June 1, 2020—*i.e.*, the record date for the Annual Meeting—there were 20,168,503 shares outstanding and entitled to vote. If shares go uninstructed at the same rate at the Annual Meeting as they were at the last one, their treatment by Defendants may well sway the outcome of the vote on the Reincorporation Proposal. If they are recorded as broker non-votes, it will fail. If they are excluded from consideration, it may pass.

39. If stockholders credit the erroneous disclosure in the Proxy, however, they will believe that broker non-votes will have no effect on the outcome of the Reincorporation Proposal.

40. Chembio stockholders need to be properly advised of the correct treatment and effect of broker non-votes on the Reincorporation Proposal before they can make an informed decision as to whether and/or how to vote their shares.

41. Defendants have compounded this critical error by also misstating Delaware law and the Company's prospective compliance therewith.

42. With respect to the former, Defendants claim that, to amend a certificate of incorporation, "*[t]he DGCL requires* the adoption of a resolution by a corporation's board of directors followed by *the affirmative vote of the majority of shares present in person or represented by proxy and entitled to vote to approve any amendment* to the certificate of incorporation, unless a greater percentage vote is required by the certificate of incorporation."

(Proxy at 24). In fact, DGCL Section 242(b) requires "a majority of the outstanding stock entitled to vote thereon". (*Id*.; *accord id.* at D-8).

43. Stockholders have thus been misinformed about the law which will apply to the Company if the Reincorporation Proposal is approved.

44. With respect to the Company's prospective compliance with Delaware law, Defendants claim that "[t]he Delaware Bylaws are consistent with the DGCL". (Proxy at 26). Once again, Defendants are wrong. As Defendants acknowledge, the "Delaware Bylaws provide that, except as otherwise provided by the Delaware Charter or the DGCL, any director may be removed, with or without cause, by the holders of two-thirds of the outstanding shares of common stock then entitled to vote at a meeting for the election of directors." (*Id*.).

45. The DGCL actually requires that, unless the certificate of incorporation provides otherwise, "[a]ny director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors". 8 *Del. C.* § 141(k). The proposed Delaware Certificate of Incorporation of Chembio Diagnostics, Inc., which is annexed to the Proxy as Appendix C, does not provide for a supermajority voting requirement for removal of the directors.

46. In sum, Defendants have misstated: (1) the voting standard applicable to the Reincorporation Proposal; (2) the treatment and effect of broker non-votes on the Reincorporation Proposal; (3) the DGCL; and (4) the Company's prospective compliance with the DGCL.

47. Any one of these would be enough to call into question the validity of Chembio stockholders' vote on the Reincorporation Proposal. Plaintiff brings this action to remedy these errors so that the vote is not tainted by Defendants' numerous, material misstatements.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER
(against All Defendants)

48.     Plaintiff realleges each allegation pleaded above.

49.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, were false and misleading and failed to include all material information. Chembio is liable as the issuer of these statements.

50.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants, who were aware of the information set forth therein. By virtue of their positions within the Company, the Individual Defendants had a duty to disclose accurate information in the Proxy.

51.     The Individual Defendants were at least negligent in filing the Proxy without accurately disclosing: (1) the voting standard applicable to the Reincorporation Proposal; (2) the treatment and effect of broker non-votes on the Reincorporation Proposal; (3) the DGCL; and (4) the Company's prospective compliance with the DGCL.

52.     This information is material to a reasonable stockholder, who would consider it important in deciding whether and/or how to vote on the Reincorporation Proposal. Moreover, a reasonable investor will view a full and accurate disclosure of the foregoing as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

53.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Reincorporation Proposal.

54. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Proxy, Plaintiff and the members of the Class are threatened with irreparable harm.

## COUNT II
BREACH OF FIDUCIARY DUTY
*(against the Individual Defendants)*

56. Plaintiff realleges each allegation pleaded above.

57. The Individual Defendants owe fiduciary duties to Chembio stockholders, including the duties of care, disclosure, good faith, and loyalty.

58. By virtue of their positions as directors of Chembio and/or their exercise of control and ownership over the business and corporate affairs of the Company, the Individual Defendants have, and at all relevant times during their respective tenures on the Board had, the power to control and influence and did control and influence and cause the Company to engage in the practices complained of herein. Each Individual Defendant was required to cause the Company to comply with Nevada law when issuing disclosures.

59. The Individual Defendants breached their fiduciary duties by issuing the Proxy, which falsely states (i) the voting standard applicable to the Reincorporation Proposal, (ii) the treatment and effect of broker non-votes on the outcome of the Reincorporation Proposal, (iii) the DGCL voting standard for charter amendments, and (iv) that the Delaware Bylaws will comply with the DGCL.

60. As a result of these actions of the Individual Defendants, Plaintiff and the members of the Class have been and will be injured.

## COUNT III
### DECLARATORY RELIEF
*(against All Defendants)*

61. Plaintiff incorporates by reference and realleges each allegation set forth above.

62. The facts and circumstances pleaded herein have given rise to an actual controversy which currently exists between Plaintiff, on one hand, and Defendants, on the other hand, concerning their respective rights and duties under federal and Delaware law.

63. Defendants misstated: (1) the voting standard applicable to the Reincorporation Proposal; (2) the treatment and effect of broker non-votes on the Reincorporation Proposal; (3) the DGCL; and (4) the Company's prospective compliance with the DGCL. In so doing, Defendants have denied Plaintiff and other Chembio stockholders full and accurate disclosure of information material concerning their vote on the Reincorporation Proposal.

64. Plaintiff desires a judicial determination and declaration that the Proxy is false and misleading.

65. A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiff and the members of the Class will receive full and accurate disclosures concerning the Reincorporation Proposal prior to the stockholder vote thereon set to take place at the Annual Meeting.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of an order:

A. Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying his counsel as class counsel;

B. A declaration that the Proxy is materially false and misleading;

C. Enjoining the stockholder vote on the Reincorporation Proposal until such time as Defendants have corrected the false and misleading statements in the Proxy and otherwise made

full disclosure of all information material to the stockholders' vote on the Reincorporation Proposal;

        D.        Finding the Individual Defendants liable for breaching their fiduciary duties;

        E.        Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

        F.        Awarding such other and further relief as is just and equitable.

Dated: July 1, 2020

OF COUNSEL:

**FIELDS KUPKA & SHUKUROV LLP**
William J. Fields
(wfields@fksfirm.com)
Christopher J. Kupka
(ckupka@fksfirm.com)
Samir Shukurov
(sshukurov@fksfirm.com)
1370 Broadway, 5th Floor – #5100
New York, New York 10018
(T) 212.231.1500
(F) 646.851.0076

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Gustavo F. Bruckner*
Gustavo F. Bruckner
(gfbruckner@pomlaw.com)
Samuel J. Adams
(sadams@pomlaw.com)
600 Third Avenue, 20th Floor
New York, New York 10016
(T) 212.661.1100
(F) 917.463.1044

*Attorneys for Plaintiff*

## PLAINTIFF'S CERTIFICATION

I, Ken Hayes ("Plaintiff"), declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary:

DATE # 6/04/20  4/17/20  OF SHARES PURCHASED  310   # OF SHARES SOLD  185   PRICE

(see attached)

4. Plaintiff is a current stockholder of Chembio Diagnostics, Inc.

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this day 30th of June, 2020.

Sign Name: *Ken Hayes*

Print Name: Ken Hayes

**Chembio Diagnostics, Inc.**                                                                 **Hayes, Ken**

## List of Purchases and Sales

| Date | Purchase or Sale | Quantity | Price Per Share/Unit |
|---|---|---|---|
| 4/17/2020 | Purchase | 50 | $11.275 |
| 4/22/2020 | Sale | 50 | $14.6 |
| 4/24/2020 | Purchase | 50 | $14.65 |
| 4/27/2020 | Purchase | 25 | $14.01 |
| 4/27/2020 | Purchase | 25 | $13.676 |
| 4/28/2020 | Purchase | 25 | $12.41 |
| 5/5/2020 | Sale | 50 | $14 |
| 5/21/2020 | Purchase | 50 | $10.825 |
| 5/26/2020 | Purchase | 45 | $10.18 |
| 6/3/2020 | Sale | 45 | $9.2904 |
| 6/4/2020 | Purchase | 40 | $8.362 |
| 6/12/2020 | Sale | 40 | $8.9895 |